UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Garo Madenlian v. Flax USA, Inc., et al, | | |

| Present: The Honorable | James V. Selna | | |
|---|---|---|---|
| Nancy K. Boehme | Not Present | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | | |
| Not Present | Not Present | | |

**Proceedings:** **(In Chambers) Order Granting Motion for Final Approval of Class Settlement and Motion for Attorneys' Fees, Costs, and Incentive Payment**

    Plaintiff Garo Madenlian ("Madenlian") and Defendants Flax USA Inc. ("Flax USA") (collectively, "Parties") jointly move for final approval of a proposed class action settlement and certification of the settlement class ("Joint Mot."). (Docket No. 42). Madenlian also made a motion ("Pl.'s Mot.") to request: (1) an award of attorneys' fees and costs for Chant Yedalian ("Class Counsel") and (2) an incentive payment for the class representative. (Docket No. 41.) During the hearing on February 23, 2015, the Court expressed its concern that the disproportionate costs rendered the actual fund for class members substantially reduced. The Court continued both motions. (Docket No. 43.) The Parties have subsequently filed a joint report stating the total amount of administrative costs incurred and a revised estimate of future administrative costs ("Joint Motion"). (Docket No. 44.) For the following reasons, the Court grants both motions.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.    Factual Background

    This is a putative class action arising out of the allegedly deceptive packaging and labeling of Flax USA's flax milk beverage products (the "Products"). (See generally First Amended Complaint ("FAC"), Docket No. 31.) More specifically, the Products at issue in this case are 32-oz cartons of aseptic flax milk, which was sold in the three flavors of unsweetened, original, and vanilla. (Id. ¶¶ 36-37.) The Products contain the following ingredients: Tricalcium Phosphate, Xantan Gum, Vitamin A Palmitate, Vitamin $D_2$, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Garo Madenlian v. Flax USA, Inc., et al, | | |

Vitamin $B_{12}$ (the "Challenged Ingredients"). (Id. ¶ 16.) Flax USA started selling the Products in 2011. (Stober Decl. ¶ 2, Docket No. 36, Ex. 3.) They are no longer in production. (Id.)

Madenlian alleges he and the class members purchased one or more cartons of the Products in reliance upon the following statement printed on the Products' labeling: "All Natural Dairy Free Beverage." (FAC ¶¶ 4, 17-24.) Madenlian alleges the use of the phrase "All Natural" on the labeling is false, deceptive, and misleading because the Products contain the allegedly artificial or synthetic Challenged Ingredients. (Id. ¶ 19.) Madenlian further contends "[a] claim that a product is 'all natural' is material to a reasonable consumer" and "[a] reasonable consumer would expect that a product labeled as 'All Natural' does not contain any artificial, synthetic or extensively processed ingredients." (Id. ¶¶ 22-23.)

### B.  Procedural Background

On November 5, 2013, Madenlian brought this class action on behalf of himself and all persons who, "within four years from the date of filing of this action, purchased any of the Flax USA Products which was labeled 'All Natural' but contains artificial or synthetic ingredients." (Id. ¶ 43.) The FAC asserts claims under (1) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; (2) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.; and (3) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (Id. ¶¶ 54-113.)

After the Court denied Flax USA's motion to dismiss the original complaint, the parties engaged in mediation with the Magistrate Judge and reached a nationwide settlement ("Settlement") that will dispose of the action in its entirety. (Joint Mot. at 2.) The stipulation of Settlement and its exhibits were filed on August 18, 2014 ("Settlement Agreement"). (Docket No. 34.) According to the Parties, "[t]he terms of the Settlement are well-informed by exchanges of information before and during the mediation. The Settlement represents a compromise, given the parties' vehement dispute over the merits and mutual acknowledgment of the risks and costs inherent in litigation." (Joint Mot. at 2) (internal citations omitted). On September 22, 2014, the Court granted the Parties' Joint Motion for Preliminary Approval of Class Action Settlement. (Docket No. 40.)

In the two motions before the Court, the Parties request that the Court: (1) certify

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
|---|---|---|---|

| Title | Garo Madenlian v. Flax USA, Inc., et al, |
|---|---|

the proposed Settlement class, (2) approve the Settlement with a settlement fund of $260,000, (3) award attorneys' fees and litigation costs in the amount of $70,000, and (4) award an incentive award to the class representative.

## II.   CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT

### A.   Rule 23 Class

The Settlement Agreement contains the following proposed Rule 23 Settlement Class:

> [A]ll Persons in the United States who purchased any of the Products during the Settlement Class Period. Excluded from the Class are: (a) Defendant's employees, officers and directors; (b) Class Counsel and its employees, officers and directors; (c) Defendant's Counsel and its partners, employees, officers and directors; (d) Persons who purchased the Products for the intended or actual use of distribution, re-sale or donation; (e) Persons who timely and properly exclude themselves from the Class; and (d) the Court, the Court's immediate family, and Court staff.

(Settlement Agreement § I.A(6).) The Settlement Class Period is defined as "the period from November 5, 2009, up to and including the date of entry of the Preliminary Approval Order." (Id. § I.A(27).) The "Settlement Class Members" would be all members of the above-defined Class who do not exclude themselves or "opt out" per the procedures and deadlines prescribed in the Settlement Agreement. (Id. § I.A(26).) On September 22, 2014, the Court provisionally certified this Settlement Class under Rule 23(b)(3). (Docket No. 40.) Nothing has changed in the interim that would warrant a deviation from the Court's prior finding with respect to class certification. Accordingly, for the reasons specified in the September 22, 2014 Order, the Court certifies the Rule 23 Settlement Class for final approval of the Settlement.

## III.   APPROVAL OF CLASS SETTLEMENT

According to Rule 23(e):

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Garo Madenlian v. Flax USA, Inc., et al, | | |

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> > (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> > (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> > (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> > (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
> > (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e)(1)-(5).

     Here, the Parties seeking approval filed a statement identifying the Settlement terms on August 18, 2014 (see generally Settlement Agreement); Class Members had 60 days until December 29, 2014 to request exclusion from the class (Joint Proposed Schedule of Dates at 3, Docket No. 39); and Settlement Class Members had 60 days until December 29, 2014 to object to the Settlement terms (Id.) Thus, the last three requirements have been satisfied, and the Court will now proceed to address the first two requirements under Rule 23(e).

     **A.    Notice Requirement**

     "Adequate notice is critical to court approval of a class [action] settlement." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998); Fed. R. Civ. P. 23(e)(1). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
|---|---|---|---|

| Title | Garo Madenlian v. Flax USA, Inc., et al, |
|---|---|

come forward and be heard." Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

Here, the Parties followed the proposed publication plan in the Preliminary Approval Order.[1] First, the Notice of Proposed Class Action Settlement ("Notice") (Docket No. 34, Ex. B) was published on a settlement website found at www.FlaxMilkSettlement.com. (Joint Mot. at 19-20; Supp. Yedalian Decl., ¶ 3.) Second, the Notice was also published on TopClassActions.com. (Joint Mot. at 19-20; Supp. Yedalian Decl. ¶ 3; Supp. Goon Decl., ¶ 4.)[2] Third, a notice was also published in USA Today on October 31, 2014, December 1, 2014, and January 6, 2015–two of which occurred prior to the deadline to opt out and object. (Joint Mot. at 19-20; Supp. Goon Decl., ¶ 3.)

In addition to providing other information, the Notice explains: (1) the context and reasons for providing the Notice; (2) the background information on this class action lawsuit; (3) the reasons for the Settlement; (4) the description of the members in the class; (5) the Products included in the Settlement; (6) the terms of the Settlement and the process for filing a claim; (7) the lawyers involved with this lawsuit; (8) potential attorneys' fees, costs, and incentive awards; (9) the implications of obtaining final approval of the Settlement; (10) options available to a class member including the option to participate, request exclusion, file written objections, or do nothing; and (11) the Settlement's effect on a class member's rights. (Notice at 1-4.)

Any Class Member had until December 29, 2014 to opt out from the Settlement Class. (Joint Proposed Schedule of Dates at 3; Settlement Agreement § VI.B.) Any Settlement Class Member had until December 29, 2014 to object to the terms of the Settlement. (Joint Proposed Schedule of Dates at 3; Settlement Agreement § VI.C.) According to the Parties, no Class Member has objected, and no Class Members have

---

[1] Due to the nature of the consumer product in this litigation, the Products were sold to distributors and then sold to consumers through grocery retailers. (Docket No. 40., at 12) As a result, Flax USA has no record available to reasonably identify purchasers of the Products nationwide. (Id.)

[2] Unless otherwise noted, "Supp. Yedalian Decl." and "Supp. Goon Decl." refer to the supplemental declarations filed in support of the Joint Mot. as part of Docket No. 42.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Garo Madenlian v. Flax USA, Inc., et al, | | |

requested exclusion from the Settlement. (Joint Mot. at 19; Supp. Yedalian Decl. ¶ 4.)

Parties appointed Gilardi & Co. LLC ("Gilardi") as class action settlement administrator to assist with publicizing the notice, establishing and maintaining the website, handling returned mail not delivered to claimants, answering inquiries from class members, receiving correspondence from class members, and receiving and processing claims. (See Settlement Agreement § V.C.) As of January 15, 2015, Gilardi received 36,191 claims, accounting for the purchase of 338,639 cartons. (Supp. Goon Decl. ¶ 7.) After two months of publicizing, the claims rate exceeds 50% of the total number of cartons sold. No class members have objected, and no class members have requested exclusion from the Settlement. (Joint Mot. at 19; Supp. Yedalian Decl. ¶ 4.)

Thus, the parties have adhered to the Court's directions in providing reasonable notice. Accordingly, the Court finds that this notice and administration plan has been adequate to support final approval of the Settlement.

### B. Fair, Reasonable, and Adequate Settlement Terms

#### 1. Settlement Terms

Under the terms of the Settlement, Flax USA has agreed to both injunctive and monetary relief. First, Flax USA has agreed to refrain from using the phrase "all natural" on any packaging for the Products printed in the future. (Settlement Agreement § IV.D.) In addition, the Settlement provides the following monetary awards to class members who submit eligible claims:

> Class members may seek $3.25 per carton for every Product purchased during the Settlement Class Period (up to a maximum of 10 cartons per name or address) for which they indicate on the claim form both (1) the name of the retailer where the Product was purchased and (2) the city and state where the retailer is located. . . . Without identifying their retailer or the retailer's location, Settlement Class Members may seek reimbursement of $2.50 per carton for every Product they purchased during the Settlement Class Period (up to a maximum of 10 cartons).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Garo Madenlian v. Flax USA, Inc., et al, | | |

(Id. § IV.A.1-2.) Flax USA has agreed to pay these eligible claims and the costs of settlement administration from a Settlement Fund of $260,000. (Id. § IV.B.) If the amount used to pay eligible claims is less than the full amount of the Settlement Fund, the remainder shall be retained by Flax USA. (Settlement Agreement § IV.B.) However, if the value of the claims received exceeds the funds available, then each claimant's recovery will be reduced on a pro rata basis. (Id.) Lastly, the Settlement Agreement also provides for the release of all claims or causes of action arising out of the facts asserted in the FAC, including claims arising out of "all natural" labeling. (Id. § I.A(24), VII.)

### 2. Fair, Reasonable, and Adequate

"In evaluating a class action settlement under Rule 23(e), the district court determines whether the settlement is fundamentally fair, reasonable, and adequate." In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008)). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." Id. To determine whether a class action settlement "is fair, reasonable, and adequate," the Court must analyze the terms of the agreement. Fed. R. Civ. P. 23(e)(2). However, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." In re Syncor, 516 F.3d at 1101. "[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Hanlon, 150 F.3d at 1025 (9th Cir. 1998) (quoting Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981)). Nevertheless, the district court does not have the "ability to delete, modify or substitute certain provisions." Id. at 1026 (internal quotation marks and citation omitted). "The settlement must stand or fall in its entirety." Id. In reviewing the settlement as a whole, Hanlon further instructs that:

> [a]ssessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
| Title | Garo Madenlian v. Flax USA, Inc., et al, | | |

Id.; see also Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003). The Court previously analyzed the majority of these factors when it preliminarily approved the Settlement. (Prelim. Approval Order, Docket No. 40.)

In addition, as the Court previously noted, the Court finds no evidence the Settlement was the product of fraud or collusion; all negotiations appear to have occurred at arm's length. (Id. at 9.) The Settlement Agreement was reached following a settlement conference with a magistrate judge on June 20, 2014. (Joint Mot. at 2.) Prior to the mediation session, Madenlian and Flax USA engaged in the informal exchange of certain information, including sales and revenue data as well as information about the Products' ingredients. (Goon Decl. ¶ 4, Docket No. 36; Yadenlian Decl. ¶ 16, Docket No. 36.) In addition, the Parties exchanged detailed mediation briefs describing their differing legal positions. (Goon Decl. ¶ 4, Docket No. 36; Yadenlian Decl. ¶ 16, Docket No. 36.) Following the mediation session, the Parties participated in additional negotiations regarding attorneys' fees and a class representative incentive award. (Goon Decl. ¶ 3, Docket No. 36; Yadenlian Decl. ¶ 15, Docket No. 36.) It also appears that the Parties have thoroughly investigated the facts behind the claims, engaged in informal discovery, exchanged certain information prior to the mediation session, and wrote detailed mediation briefs describing their position. Thus, the procedural steps taken by the Parties favor approval.

The Court also conducted an analysis of the substantive terms in its February 23, 2015 tentative order and at the February 23, 2015 hearing. Based on the estimates proffered by the Parties in the January 23, 2015 Joint Motion, the Court expressed its concern that the costs of administration seriously undermined any assessment of the fairness of the ultimate award to class members.[3] The hearing was continued, and the Parties have subsequently filed the Joint Report stating the total amount of administrative costs incurred as of February 27, 2015 and a revised

---

[3] Based on the estimates in the January 23, 2015 Joint Motion, there were only 36,191 claims at the time and the total administrative costs was estimated at $125,909.95. (Supp. Goon Decl. ¶ 7.) This was significantly more costly than the Parties' original estimated administrative costs of no more than $10,000 for processing all of the claims. (See Prelim. Approval Order at 9.) Based on the estimates from the Joint Motion, the average administration cost of each claim was about $3.48.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Garo Madenlian v. Flax USA, Inc., et al, | | |

estimate of future administrative costs. (Docket No. 44.)

According to the revised estimates as of February 27, 2015, Gilardi has incurred administrative costs in the amount of $27,516.50. (Joint Report, at 1.) Gilardi's revised estimate for future administrative costs is $51,130.00. (Id.) Flax USA has also paid $5,000 for notice publication on TopClassActions.com.[4] (Id.) Thus, the total incurred and projected administrative costs now amounts to $83,646.50. (Id.) Deducting the total amount of incurred and estimated costs from the $260,000 Settlement Fund leaves $176,353.50 to be distributed to the Class Members.

As of February 27, 2015, a total number of claims is 50,817. (Id.) Gilardi estimates that the latter portion of the claims period will yield fewer claims and that about 10-20% of the claims will be a duplicate. (Id.) Based on this, Gilardi estimates that the total number of claims for which a check will be issued will be 64,100. (Id.) This comes out to approximately $2.60 - $3.47 per claim,[5] which is lower than the parties' prior estimates. (See Supp. Goon Decl. ¶ 12.)

Thus, with some reluctance, the Court concludes that the revised estimates demonstrate a fair, adequate, and reasonable result for Settlement Class Members. Given the amounts already spent for administrative expenses, this approach is preferable to pursing a *cy pres* approach at this point.

## IV. CLASS REPRESENTATIVE INCENTIVE AWARD

Courts have discretion to issue incentive awards to class representatives. Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009). The awards

---

[4] Although an additional cost of $5,962.50 was incurred for notice publication in USA Today, Flax USA agreed to pay that amount separately, and the money will not come out of the $260,000 Settlement Fund. (Supp. Goon Decl. ¶ 3, Docket No. 42-2.) Thus, this amount is not added to the costs for the sake of calculating the ultimate award to Settlement Class Members.

[5] This assumes that each claim is based on ten cartons, and that the split between undocumented claims is 90% ($2.50 per claim)/10% ($3.25 per claim).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Garo Madenlian v. Flax USA, Inc., et al, | | |

are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments. The district court must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003). Here, Madenlian requests a separate payment for an incentive award in the amount of $5,000 to be awarded to Garo Madenlian. (Pl.'s Mot. 9-13.)

First, it appears that Madenlian stepped forward and took on risks, including the risk of subjecting himself to intrusive discovery, the risk of liability for defense costs in the event the litigation was unsuccessful. (Id. At 10.) In addition, Madenlian also consistently communicated with Class Counsel throughout the lawsuit, reviewed documents, provided input, kept apprised of litigation developments, participated in the settlement conference before the Magistrate Judge, participated in negotiating the Settlement. (Id.) Moreover, Madenlian devoted approximately 30-35 hours of his time to pursue this lawsuit. (Id.)

Thus, the Court finds that an incentive award in the amount of $5,000 is fair, adequate, and reasonable.

## V. ATTORNEYS' FEES AND COSTS

The Court may award reasonable attorneys' fees and costs in certified class actions where they are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Even when parties have agreed to a fee award, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011). Here, Medenlian requests a separate award for attorneys' fees and costs in the amount of $70,000 to be awarded to Class Counsel. (Pl.'s Mot. at 1.) The request is unopposed. This Court will first analyze the reasonableness of the fee award under the percentage of recovery method, then perform a cross-check using

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Garo Madenlian v. Flax USA, Inc., et al, | | |

the lodestar method.

### A.     Percentage of Recovery Method

In a common fund case, the court has discretion to use either a percentage or lodestar method to determine attorney fees.[6] Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). The percentage method requires the court to simply determine what percentage of the fund would provide Class Counsel with a reasonable fee under all the circumstances. Id.

The benchmark percentage of recovery for attorneys' fees in a common fund settlement is 25 percent of the total settlement fund. In re Bluetooth, 654 F.3d at 942; see Boeing Co. v. Van Gemert, 444 U.S. 472, 478-80 (1980). The percentage can be adjusted from the benchmark after taking into account several factors, such as the results achieved, the risk involved in undertaking the litigation, the generation of benefits beyond the cash settlement fund, the market rate for services, the contingent nature of the fee, the financial burden to counsel, the skill required, the quality of the work, and the awards in similar cases. Vizcainov. Microsoft Corp., 290 F.3d 1043, 1048-49 (9th Cir. 2002); Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

Here, Class Counsel contends that the request for $70,000 in attorneys' fees is reasonable because it is less than the 25% benchmark. (Pl.'s Mot. at 3.) Class Counsel arrived at this conclusion by first adding $70,000 (the amount he requested for attorneys fees and costs) to $260,000 (the amount of the Settlement Fund). The combined total constitutes $330,000, and 25% of $330,000 is $82,500.[7]

---

[6]   "Despite this discretion, use of the percentage method in common fund cases appears to be dominant." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007); see also In re Activision Sec. Litig., 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989) (discussing advantages of percentage method).

[7]   Although the 25% benchmark amount could be calculated from a base amount of $260,000 instead of $330,000, the fact that the requested amount of $70,000 is going to be paid separately by Flax USA is significant. Thus, the Court is willing to adopt Class Counsel's reasoning and use the amount of $330,000 as the base rate for calculation purposes. Effectively, counsel now

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
| Title | Garo Madenlian v. Flax USA, Inc., et al, | | |

Because $70,000 is approximately 21% of $330,000, Class Counsel seeks an amount less than the 25% benchmark. Thus, his request for $70,000 is a reasonable fee by this standard.

    **B.    The Lodestar Method**

The Ninth Circuit encourages courts to use the lodestar method as a "cross-check" on the reasonableness of a fee award determined with the percentage method. See Vizcaino, 290 F.3d at 1050; In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 109 F.3d 602, 607 (9th Cir. 1997) ("It is reasonable for the district court to compare the lodestar fee, or sum of lodestar fees, to the 25% benchmark, as one measure of the reasonableness of the attorneys' hours and rates."); Kakani v. Oracle Corp., No. C 06-06493 WHA, 2007 U.S. Dist. LEXIS 95496, at *6 (N.D. Cal. Dec. 21, 2007). Moreover, the lodestar method is also "appropriate in class actions brought under fee-shifting statutes where the relief sought is often primarily injunctive in nature and thus not easily monetized." In re Bluetooth, 654 F.3d at 941-42. Indeed, the class members also obtained injunctive relief from this Settlement when Flax USA agreed to not use the phrase "all natural" on any future flax milk packaging. (Settlement Agreement § IV.D.) Thus, the requested amount should be cross-checked with lodestar method, and Class Counsel has provided a lodestar analysis as a cross check. (Pl.'s Mot. at 4-9.)

To calculate the "lodestar," the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. McElwaine v. U.S. West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999). The court may raise or lower the lodestar based on several factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the

---

created a common fund of $330,000 but broken into two separate pieces.

Case 8:13-cv-01748-JVS-JPR   Document 45   Filed 03/16/15   Page 13 of 14   Page ID #:553

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Garo Madenlian v. Flax USA, Inc., et al, | | |

experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Fischel v. Equitable Life Assurance Soc'y, 307 F.3d 997, 1007 n.7 (9th Cir. 2002). The court must be cautious, however, not to adjust the lodestar figure based on any of the foregoing factors that are subsumed in the original lodestar calculation. Morales v. City of San Rafael, 96 F.3d 359, 364 & n.9 (9th Cir. 1996). The Ninth Circuit has noted that multipliers range from 1.0-4.0 and a "bare majority" fall within the range of 1.5-3.0. Vizcaino, 290 F.3d at 1051 n.6; Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.").

"The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." Hanlon, 150 F.3d at 1029. Class Counsel has devoted 220.5 hours of his time and planned to devote at least an additional 10 hours with regard to the motions before the Court. (Pl.'s Mot. at 4.) Class Counsel's requested rate of $550 per hour has previously been approved in the Central District of California. In re Toys "R" Us–Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litigation, No. cv-08-01980 MMM (FMOx), 295 F.R.D. 438, 462-67 (C.D. Cal. Jan. 17, 2014). Class Counsel multiplied 230.5 hours with the hourly rate of $550 to determine that the lodestar amount is $126,775. (Pl.'s Mot. at 7.) Thus, Class Counsel's requested amount of $70,000 is below the lodestar amount of $126,775.

Thus, the Court finds that the request for $70,000 in attorneys' fees and costs is reasonable.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Madenlian and Flax USA's Joint Motion for Final Approval of the Class Action Settlement and Certification of the Settlement Class. The Court also **GRANTS** Madenlian's Motion to Award Attorneys' Fees and Costs to Class Counsel and an Incentive Award to the Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-1748 JVS (JPRx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Garo Madenlian v. Flax USA, Inc., et al, | | |

Representative.

IT IS SO ORDERED.

: 

Initials of Preparer   nkb